Good afternoon, may I please the court. Artem Amsaryan for the petitioner Mr. Mesropyan. This is an immigration case and there were 13 hearings in this case. The petitioner appeared at every hearing in the courtroom and the petitioner appeared in most of the hearings, ready to go for a trial on his asylum case with his father, who was granted asylum in the United States. His entire family was granted asylum in the United States. And the petitioner was a derivative of asylum application of his father, so he was waiting for his adjudication. He fully cooperated with the government. He had strong relief and he was always ready. Government continued cases for a number of times, ordering father's file, reviewing father's file. I would, of course, speculate probably they were trying to resolve this. Nevertheless, at the last hearing, a transcript of which does not exist. I don't know whether tape was lost or I don't know whether the judge simply did not record. The last hearing in December of 2007, my client was given written notice that Board of Immigration Appeals agreed that was slightly unclear. There is no evidence that he was provided notice orally. There is no evidence that that notice, oral notice, was given there. And if it was, whether it was properly translated to him in his native language, he always used the interpreter. And whatever notice he was provided, Board agrees was slightly unclear. We, of course, argued that for non-English speaker, it wasn't slightly unclear, but it was clearly unclear. So my client does not show up for April 8th hearing thinking the hearing is actually in August. And just to make sure I understand, you're saying that it's unclear because you don't read this, or your client didn't read this to be April 8th, 2008. That is correct. And Board acknowledged that it's slightly unclear. Do you think it's unclear? My thinking that, I see it says April. However, R and I looks like U. So it's a handwriting of a judge that the judge wrote April. However, for non-English speaker, it's clearly unclear for non-English speaker. That's why I agree that it's slightly unclear. Well, I'm just, this is a very interesting case. And you've laid out that your client made every caring and all of his family and now citizen here. He was apparently at traffic court when this was going on, I think. Isn't that what the argument is? That is correct. But he didn't say, I'm not going to go to immigration court because I have traffic court. He was sure his immigration court is in August. This traffic court happened to coincide with the fact that he had traffic court the same day. Because I thought you were making alternative arguments. That's an alternative argument that had he known, the primary argument, the notice is the fact that there is no notice. Like I said, BIA agreed that the notice is unclear. And doesn't it have to be an exceptional case at this point? And I'm trying to figure out what you are arguing is exceptional. Is it the reason for missing the hearing or just his case in the entire? First we are arguing no notice. And if there is no notice, the court agrees that the notice is unclear and there is no evidence of oral notice and the written notice is unclear, then there is no other requirement. However, if court disagrees with us that, you know what, no, this is very clearly April, then the second argument, this exceptional circumstance is understated. Klein had no reason not to appear. He had strong relief. His deportation to country from which family members received asylum will break up his family, probably cost him his life. He always appeared. He always cooperated. Number of times cases was continued because of the government. So it's not that he didn't want to appear or disrespected the court or he changed his address to go deform the court. He was always there. He was always ready to go. His witnesses, his father, who is now a U.S. citizen, was always in court with him. Transcript clearly shows that. And were you his attorney in immigration court? No. Okay. So did he know that this was the final hearing? I mean, he thought it was in August, but did he know it was the final hearing? I don't know if he knew whether it's final or not. Unfortunately, in immigration court, the reality is there's no such thing as final. Judge keeps setting up for final, and as the transcript shows, there are at least five final hearings, and he shows up with his father as a witness, and they continue for any different reasons. Did your client read English? Does he read English? No, he doesn't. By today, he probably does because it's been 13 years. But at that time, looking at the writing, he guessed it was August. I imagine there's a lot of people who go through this process who don't speak English or read English, and they manage to get to their hearings. And you're saying if he doesn't read English, then does it matter whether it said April or whatever it said? Didn't he have to have someone translate it for him or tell him what it was? I don't know if that helps you. Well, it helps us from a perspective that because it says April or August and they look the same, you don't really need to be able to read English to understand what August is. Well, but you said he doesn't speak English or read English, so he had to rely on a translator. So did the translator was the one who didn't read this right? There's no evidence of translator during the trial or the last hearing. So how did he get to his hearings in the past? Most of the people know what August means for simple virtue that all languages, majority languages have August the same. All of his other hearings before this one? Always was interpreted there, and his attorney always was there for him to translate. And so you're saying no one was able to interpret this for him? Well, I don't know if somebody sat down and interpreted it for him. All I know that when he was given the notice, he understood the notice to be August. But the last hearing did not have an interpreter. Didn't have an interpreter. There's no evidence of anything. Had prior hearings. I'm just trying to figure out. Prior hearings there were. Okay. Did you request an interpreter? I mean, did somebody request an interpreter for the last hearing? The first hearing usually court understands that the question of the respondent, that proceeding petitioner is a respondent, and appoints the interpreter. And then the interpreter always comes, and the court usually pays for the interpreter. The interpreter is always there. There is no evidence that the last hearing had an interpreter. There is no evidence the last hearing was recorded. There is no evidence of last hearing at all other than the notice, which we claim to be defective. In fact, there's several hearings. So then the fact that he was at trial court had nothing to do with this? At traffic court? No. It's just coincidence that he had nothing to do with it. No, absolutely not. So then if we find that he had sufficient notice, you're not relying on the traffic court? No. At that point, if you find that he had sufficient notice, then the only other argument we have is it's a totality of circumstances. It's the same argument that his entire family is here. He has no reason not to appear. He always cooperated with the court. He always informed of his addresses. He misread, misunderstood the notice. It's not that he simply ignored the court, moved somewhere else. So are you arguing the reason for his missing the hearing is an exceptional circumstance or his entire case is an exception? The reason, the very first, the real reason why he did not show up, he read it as August. I'm sorry. He what? He read it to be in August. I know. But for exceptional case, I'm just trying to figure out your theory of why this would be an exceptional case if we find he had proper notice. Because there is no other reason for him not to appear other than misreading the, misunderstanding the notice. If the court finds the notice is clear and he had a notice, then the only other step is then the notice, whatever was provided to him, he misunderstood because he clearly believed it to be August. And then it becomes a same case where the Petitioner also misunderstood the hearing date, but totality of circumstances allowed the reopening. But the seeing, doesn't that limit it to truly unconscionable cases? It is unconscionable case. His entire family was granted by U.S. government asylee status or refugee status. They're all here. He was always in court ready to go. His applications are filed. And other than for our argument defective notice. And he was likely to be granted relief. He was likely to be granted relief. And he had due diligence all along. Absolutely. 13 hearings, he always appeared. With witnesses ready to go. So that distinguishes the Vuk Mirovic case. Vuk Mirovic is the guy who actually not informed the court of his new address and didn't show up. Yeah. And he also, according to Judge Schroeder, there was no strong likelihood of relief. That is correct. Your client, has he had his criminal background checked? And is there any criminal background? To my knowledge, he doesn't have any criminal issues. No criminal issues. And how long has he been in this country? I'm sorry? How long has he been in this country? Well, he arrived here, and I'll give you a specific date. I have it on notice here. In 2000, give me just a second. With his family, right? In 2004. And the family was here pre-2000. And they're all in Glendale? I believe so. I read that somewhere in the record. They're all in this area in LHS. I don't remember his address exactly. All right. Well, let's hear from the government. Good afternoon, Your Honors, and may it please the Court, my name is Jesse Buse, and I represent the Attorney General. Just to clarify something with respect to the interpreter in the hearings in this case that Judge Morgia asked, in this case, in the normal course of an in absentia motion to reopen for an in absentia rescission, the record is not transcribed. The Court, if it comes this far, usually doesn't have a copy of the hearings. Why is that? Just because it is normally, the motion is just, the hearings are transcribed when they're in absentia. Why was the last, the hearing where he was, why is there no transcript for the hearing in which he was deported in absentia? Well, in this case, the counsel for Mr. Masrovian took it upon himself to request copies of the tapes in this case and to attempt to transcribe them. And apparently, according to documents he submitted, the last two tapes, one that would establish the one prior to the final hearing and the final hearing, were allegedly, the tapes were damaged or the immigration judge could not be heard on the tapes. So the transcription company indicated they could not transcribe these tapes. It seems odd to me that he would show up for 13 hearings in a row with his father in tow. And what was the grounds for deportation in absentia? Was there an order? He had three grounds of inadmissibility in this case, Your Honor, under INA 212A6C1 and 2, and 212A7811, because I believe he entered using a passport issued in somebody else's name. He was representing himself to the U.S. Embassy. We've held that's not a ground. I mean, that's not a reason to deport someone, because usually we have all that law that says that usually that's how people get into this country when they're fleeing because they're refugees. Well, that is a ground for deporting someone. He's inadmissible on that ground. He admitted to inadmissibility, and that's not an issue here. So he is inadmissible and removable on that ground by his own admission. The question here, and the question he was pursuing before the Court, was whether he could get relief in the form of asylum. And here in this case, and I'd like to distinguish this case from the Court's decisions in Sing. In that case it was, as the Court said, it was an unusual circumstance. It would result in an unconscionable result, because the alien in that case had established was facially eligible for adjustment of status. All the evidence had been submitted before the Court in that case. INS at the time admitted that the alien was facially eligible and likely would have been granted relief. And that's not the case here. Indeed, under similar circumstances, the Court has found no exceptional circumstances, no likelihood of success, where the alien is seeking asylum. Indeed, in Vukmirovic. But given that his entire family was granted asylum, why wouldn't he be granted asylum? Well, his family was granted asylum based on his father's asylum application. His father filed an application after he came to the United States in 2000, based on events that happened to him. Mr. and Mrs. Robian's asylum claim is not based on events that happened to his father. It's based on events that happened to him after his father and the rest of his family left Armenia. The fact that it was based on both of their separate memberships in the People's Party in Armenia, but on a completely separate set of facts with respect to the events that happened to them. In this case, Mr. and Mrs. Robian would have had to meet his burden to establish his own eligibility for asylum, rather than based on his father's claim. And here we have the, on the record here, all we have are his asylum application and statement. We have no testimony, we have no evidence. Because you didn't take any, because the I.J. kept continuing his hearing, and he never really had a hearing. Well, in order to get the evidence, which was in this case, I believe, the file with respect to the father's asylum. You know, all week we've had these cases. I don't know how many of them. And the government has asked us to send it to mediation because of the inequities of the situation and the Morton memo. And we have. And I'm wondering if you'd be willing to take this one to mediation, too. Well, I actually have been looking over a couple of these. I have. The Court's been issuing orders in some of these cases. Right. Well, no, we didn't issue those. We issued it at the government's request. Right. We've been starting to get some of those orders in when cases are going to decision. In this case, my initial review, I did not believe that remand for prosecutorial discretion would be warranted pursuant to the Morton memo. Would you be willing to discuss it with the mediator? Because I don't think it's necessary for you to go into all your reasons with us if you're willing to go to mediation. I would be willing to go to mediation to discuss it further if there are other equities that aren't apparent. Right. We'd be certainly willing to do that. Okay. Well, why don't we not submit this case but instead order it tonight, circuit mediation? Would you be willing to do that? Yes. No problem. No problem? Okay. I'd like to second Judge Wardlaw's request. It does seem to me a sort of case that, you know, there's been a change in the way the service has been handling these, and I think this is the sort of case they really could mediate. Well, I'd be more than happy to take any evidence that we can get. Thank you. And I wish the weather was better for you coming all the way out from Washington. Not a problem at all. No. Okay. Well, then we will not submit this case, and we will do we have a question? No. I don't object to that. Just in case it's not successful, what's the evidence that you would submit that compels going or that you think there was sufficient notice here? I mean, I just want you to respond briefly if you could to what the. Well, in this case, I think just a cursory look at the hearing notice would establish that it could not reasonably be read as August in this case. But in his circumstance, apparently there was no interpreter. We don't know, I guess, if there was. It sounds like, you know, the record's in bad shape, which is why I don't have any objection to going to mediation. I would note that there was an interpreter present that recovered here. That the, as Ms. Robey has given, oral notice of the hearing date at every prior hearing. We simply don't have those last few transcripts. But in this case, the standard for exceptional circumstances is something that's beyond the alien's ability to control. Here, he's somebody who, according to opposing counsel, does not read English well. Under those circumstances, it was certainly in his ability to either contact his counsel, his prior counsel, who did show up at the hearing, the proper hearing date on April 4th, or to call the court's 1-800 number where he could get his hearing notice. He can have it read to him. And setting aside the fact that this just cannot reasonably be read as saying August, it was within his ability to determine what the hearing date was, even if he himself was not a native English speaker. Okay. Okay, thank you. Great, thank you. This court will adjourn the session for today. Thank you very much, counsel.
judges: Noonan, Wardlaw, Murguia